**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CITY OF CHICAGO, ILLINOIS

                Plaintiff,

    v.

EBAY, INC.

              Defendant.

Case No. 08 CV 3281

Hon. Blanche M. Manning

**MEMORANDUM OF DEFENDANT EBAY, INC.
IN SUPPORT OF ITS MOTION TO DISMISS**

Michele Odorizzi
Lori E. Lightfoot
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
312-782-0600

Charles A. Rothfeld
MAYER BROWN LLP
1909 K Street, N.W.
Washington, D.C. 20006
202-263-3000

Michael J. Kelly
Jill E. Anderson
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
312-360-6000

Dated:  August 8, 2008

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 3

ARGUMENT ........................................................................................................... 8

I.    The City Has No Authority Under State Law To Require eBay To Collect And Remit Amusement Taxes. ................................................................................................ 8

    A.    Under Illinois Law, eBay Cannot Be Deemed a "Reseller's Agent." ........................... 8

    B.    The City's Home Rule Authority Does Not Extend to Taxing On-Line Entities Like eBay. ...................................................................................................................... 10

    C.    The City's Request For Information From eBay Also Fails Under The Ticket Resale Act. 13

II.    Federal Law Preempts the City From Imposing on eBay an Obligation to Collect and Remit Taxes Owed by Ticket Sellers. ................................................................................ 13

    A.    The CDA Preempts the Application of the Amusement Tax Against eBay ................. 14

    B.    The Internet Tax Freedom Act Bars the Imposition of the Amusement Tax on eBay . 16

III.    The City Has No Power Under The Commerce Clause To Tax eBay. ........................ 17

    A.    The U.S. Constitution Bars State and Local Governments From Imposing Sales and Use Taxes On Corporations That Do Not Have A "Physical Presence" In The Taxing Jurisdiction ............................................................................................................ 18

    B.    The Complaint Fails To Allege Any Facts That Could Establish That eBay Has A "Physical Presence" In The City Of Chicago .................................................................. 20

        1.    eBay University .............................................................................................. 21

        2.    Venues and ticket brokers ............................................................................... 23

        3.    Business relationships ...................................................................................... 24

        4.    "Cookies" on eBay users' computers ............................................................... 25

CONCLUSION ........................................................................................................ 29

# TABLE OF AUTHORITIES

**Cases**

47 U.S.C. § 230(b)(2) ............................................................................................ 28

*Barclays Bank PLC v. Franchise Tax Bd. of California*, 512 U.S. 298 (1994)...................... 23

*Bates v. Mo. Dep't of Corrections*, 2008 WL 380417 (E.D. Mo. Feb. 11, 2008) ...................... 22

*Berman v. Richford Indus., Inc.*, 1978 WL 1104 (S.D.N.Y. July 28, 1978)................................ 22

*Betzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) .............................................................. 15

*Bloomingdales by Mail, Ltd. v. Pennsylvania*, 567 A.2d 773 (Pa. Cmwlth. 1989) ..................... 20

*Chicago Health Clubs, Inc. v. Picur*, 124 Ill.2d 1, 528 N.E.2d 978 (1988) ................................ 11

*Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008)................................................................................................ 15

*City of Chicago v. Roman*, 184 Ill.2d 504, 705 N.E.2d 81 (1998)............................................... 10

*Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977)....................................................... 18

*Current, Inc. v. State Bd. of Equalization*, 24 Cal. App. 4th 382 (Cal. Ct. App. 1994).... 19, 20, 23

*D.H. Holmes Co. v. McNamara*, 486 U.S. 24 (1988) ................................................................. 19

*Dell Catalog Sales, L.P. v. Comm'r of Revenue Servs.*, 834 A.2d 812 (Conn. Sup. Ct. 2003).... 23

*Dep't of Revenue v. Share Int'l*, 676 So.2d 1362 (Fla. 1996)................................................... 19, 20

*E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007)................................... 20

*Gade v. Nat'l Solid Wastes Mgmt. Assn'n*, 505 U.S. 88 (1992) ................................................. 14

*Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816 (Cal. App. Ct. 2002) ................................................. 14

*Henson v. CSC Credit Servs.*, 29 F .3d 280 (7th Cir.1994) ......................................................... 6

*In re Intercard, Inc.*, 14 P.3d 1111 (Kan. 2000) ................................................................. 19, 20

*Mr. B's, Inc. v. City of Chicago*, 302 Ill.App.3d 930, 706 N.E.2d 1001 (1st Dist. 1998) .... 3, 4, 11

*Nat'l Geographic Soc'y v. California Bd. of Equalization*, 430 U.S. 551 (1977)................... 19, 28

*National Bellas Hess, Inc. v. Dep't of Revenue of the State of Ill.*, 386 U.S. 753 (1967)............. 18

*Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175 (1995) ........................... 17, 18, 20

*Pledger v. Troll Book Clubs, Inc.*, 871 S.W.2d 389 (Ark. 1994)............................................... 23

*Quill Corp. v. North Dakota*, 504 U.S. 298 (1992) ......................................................... passim

*Rollins v. Ellwood*, 141 Ill.2d 244, 565 N.E.2d 1302 (1990)...................................................... 9

*Scholastic Book Clubs, Inc. v. State, Dep't of Treasury*, 567 NW.2d 692 (Mich. App. Ct. 1997)22

*Scripto, Inc. v. Carson*, 362 U.S. 207 (1960)........................................................................ 19, 23

*SFA Folio Collections, Inc. v. Bannon*, 585 A.2d 666 (Conn. 1991) ......................................... 20

*SFA Folio Collections, Inc. v. Tracy*, 652 N.E.2d 693 (Ohio 1995)............................................ 20

*Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d Cir. 2002) ..................................... 25

*St. Tammany Parish Tax Collector v. Barnesandnoble.com*, 481 F. Supp. 2d 575 (E.D. La. 2007) ............................................................................................................ 19, 20, 23, 24

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008)................................................................ 28

*Tax Appeal of Baker & Taylor, Inc. v. Kawafuchi*, 103 Hawaii 359 (2004) ............................... 20

*Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue*, 483 U.S. 232 (1987)........................... 23

*U.S.G. Italian Marketcaffe, LLC v. City of Chicago*, 332 Ill.App.3d 1008, 775 N.E.2d 47 (1st Dist. 2002).................................................................................................................................. 12

*United States v. Bush*, 70 F.3d 557 (10th Cir. 1995) .................................................................. 22

*West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186 (1994).......................................................... 17

**Statutes**

225 ILCS 407/10-27(c)(1) .......................................................................................................... 6, 9

47 U.S.C. § 151 note ...................................................................................................................... 2, 13

47 U.S.C. § 151 note, § 1101(a) ....................................................................................................... 16

47 U.S.C. § 151 note, § 1105(2)(B)(ii) ............................................................................................ 16

47 U.S.C. § 151 note, § 1105(3) ....................................................................................................... 16

47 U.S.C. § 230 ............................................................................................................................... 2, 13

47 U.S.C. § 230(a)(4) ........................................................................................................................ 15

47 U.S.C. § 230(b)(5) ........................................................................................................................ 15

47 U.S.C. § 230(c)(1) ........................................................................................................................ 14

47 U.S.C. § 230(e)(3) ................................................................................................................... 14, 16

47 U.S.C. §609 .................................................................................................................................... 2

65 ILCS 5/11-42-1 ............................................................................................................................. 12

65 ILCS 5/11-42-5 ............................................................................................................................... 3

65 ILCS 5/8-11-6a ............................................................................................................................. 11

720 ILCS 375/1.5 ................................................................................................................................ 4

720 ILCS 375/1.5(a) ........................................................................................................................... 3

720 ILCS 375/1.5(b) ........................................................................................................................... 3

720 ILCS 375/1.5(b)(4) ................................................................................................................... 3, 12

720 ILCS 375/1.5(c)(4)........................................................................................................................ 4

720 ILCS 375/1.5(c)(6) ...................................................................................................................... 12

720 ILCS 375/1.5(c)(6)(B) .............................................................................................................. 5, 13

Chicago Municipal Code § 4-156-010................................................................................................ 1, 7

Chicago Municipal Code § 4-156-020(A) ............................................................. 7

Chicago Municipal Code § 4-156-030(A). ............................................................ 7

Chicago Municipal Code § 4-156-030(F) ............................................................. 8

Ill. Const. of 1970 art. VII, § 6(e) ...................................................................... 11

U.S. Const. art. I, § 8, cl. 3 ............................................................................... 17

## Other Authorities

10 Ill. L & Prac. § 741 (2007 Supp.) ................................................................. 10

61A Am. Jur. 2d Pleading § 68 (May 2008) ........................................................ 22

Austan Goolsbee, *In a World Without Borders: The Impact of Taxes on Internet Commerce*, 115 Q.J. ECON. 561 (2000) ........................................................................................ 28

*House Debate on H.B. 873*, Ill. Gen. Ass'y, 94th Sess., H.R. Tr. 130-31 (Apr. 15, 2005) (statement of Rep. Saviano) ............................................................................. 6

NEW OXFORD AM. DICTIONARY (2005) ................................................................. 25

*Senate Hearing on H.B. 873*, Ill. Gen. Ass'y, 94th Sess., Sen. Tr. 19 (May 18, 2005) (statement of Sen. Harmon) ............................................................................. 5

*Senate Hearing on H.B. 873*, Ill. Gen. Ass'y, 94th Sess., Sen. Tr. 65 (May 20, 2005) (statement of Sen. Harmon) ............................................................................. 4

U.S. GEN. ACCOUNTING OFFICE, SALES TAXES: ELECTRONIC COMMERCE GROWTH PRESENTS CHALLENGES; REVENUE LOSSES ARE UNCERTAIN (2000) ......................................... 26

## Rules

Fed. R. Civ. P. 8(a)(2) ..................................................................................... 21

Fed. R. Civ. P. 8(a)(3) ..................................................................................... 21

Fed. R. Civ. P. 8(d)(2) ..................................................................................... 21

## <u>INTRODUCTION</u>

The City of Chicago (the "City") filed this lawsuit in the Circuit Court of Cook County against eBay, Inc. ("eBay") in an improper attempt to force eBay to collect the City's 8% amusement tax on tickets to Chicago events that are sold through eBay's Internet listing service. Under the City's Amusement Tax ordinance, ticket brokers and other "resellers" who sell tickets on eBay or similar Internet sites are required to pay the Amusement Tax on any portion of the sales price that exceeds the face value of the ticket.  Effective September 1, 2006, the Amusement Tax ordinance was amended to require a "reseller's agent" to collect and remit the tax as well.  *See* Chicago Municipal Code § 4-156-010.  Although the Illinois legislature specifically concluded that eBay and similar Internet listing services are *not* agents of ticket resellers and are *not* required to collect or remit amusement taxes, the City's Department of Revenue claims that eBay nevertheless falls within the ordinance's broad definition of a "reseller's agent."  The City takes the position that eBay is therefore required to monitor all ticket sales to Chicago events on its site, to determine whether tickets are being sold above face value and, if so, to remit the required tax to the City.

In this lawsuit, the City seeks to compel eBay to provide it with a broad range of information about all sales of tickets to Chicago events made using eBay's website from January 1, 2000 to the present.  It also seeks to collect from eBay any unpaid taxes on those ticket sales for the period from September 1, 2006 to the present.  eBay removed the City's collection action to this Court on diversity grounds and now seeks dismissal of the complaint because the imposition of the Amusement Tax on eBay is unauthorized under state law and would be both unconstitutional and preempted under federal law.

By its terms, the Amusement Tax ordinance applies only to ticket resellers and their agents.  As such, it cannot apply to eBay, which does not act as the agent of either the buyer or

1

seller, but rather merely provides a venue in which sales transactions can occur.  *See* Part I, below.  Furthermore, any attempt to extend the Amusement Tax to eBay would be beyond the City's authority under state law.  As explained in greater detail in Part I-B below, the City has no home rule authority to tax the resale of tickets.  While the General Assembly has provided municipalities with statutory authority to tax ticket resellers, it expressly declined to impose any collection obligation on Internet listing services like eBay.  Thus, even if the 2006 amendment to the ordinance could be deemed to apply to eBay, it would be unauthorized under state law.

Furthermore, any attempt to force eBay to police its customers' transactions to determine whether they were subject to state and local taxes and then to collect and remit those taxes to local authorities would be preempted by federal law.  *See* Part II below.  The City's attempt to conscript eBay and similar internet listing services into the role of tax collector has no parallel in *any* other jurisdiction in the nation.  For good reason.  The federal Communications Decency Act, 47 U.S.C. § 230, bars state or local governments from making on-line sites liable for activities conducted on those sites by third parties.  And the Internet Tax Freedom Act, 47 U.S.C. § 151 note, as amended by the Internet Tax Nondiscrimination Act, PL 108-435, 47 U.S.C. § 609 note, prohibits local governments from doing precisely what the City is attempting to do here— improperly characterizing eBay as the "agent" of ticket resellers and imposing taxing obligations on it simply because the seller uses eBay's listing service.

Finally, forcing eBay to collect and remit Amusement Taxes would also run afoul of the Commerce Clause.  *See* Part III below.  The Supreme Court has applied a bright-line rule prohibiting local taxing jurisdictions from imposing sales and use tax obligations on sellers who do not have a physical presence in the jurisdiction and who communicate with in-state buyers only through the mail, or telephone or the Internet.  The purpose of this rule is to create a "safe

harbor," protecting interstate commerce from becoming bogged down in a welter of state and local tax requirements. That "safe harbor" protects eBay, which has no physical presence in the City of Chicago, from any attempt by the City to force it to collect and remit any kind of sales or use tax, including taxes on the resale of tickets.

As set forth herein, there are numerous grounds on which this Court should reject the City's improper exercise of municipal power and thereby dismiss this Complaint with prejudice.

## **BACKGROUND**

### *Resales of Tickets Using Internet Auction Listing Services*

For many years, the City of Chicago has imposed a special tax on amusements such as theater performances and sporting events that take place within the city limits. There is no doubt that the City has the authority to impose a tax on the venues that sell tickets to amusements. The General Assembly has specifically granted all municipalities the power to license, regulate and tax "theatricals and other exhibitions, shows and amusements" as well as "all places for eating or amusement." 65 ILCS 5/11-42-5. The Court can take judicial notice of the fact that tickets sold to events held in Chicago typically include the 8% City amusement tax on the face of the ticket.

Historically, "ticket scalping"—reselling a ticket at a price above its face value—was generally unlawful in Illinois. 720 ILCS 375/1.5(a). However, the law has evolved over time. In 1991, for example, an exception to this law was made for ticket brokers who are registered with the Illinois Secretary of State. 720 ILCS 375/1.5(b). To take advantage of the exception, ticket brokers must (among other things) pay all applicable state and local taxes. 720 ILCS 375/1.5(b)(4). When ticket brokers buy tickets from a venue, they (like any other purchaser) pay the ticket's face amount, relevant fees and applicable taxes, including the Amusement Tax. *See Mr. B's, Inc. v. City of Chicago*, 302 Ill.App.3d 930, 932, 706 N.E.2d 1001, 1003 (1st Dist. 1998).

In 1995, the Chicago Amusement Tax ordinance was amended to extend the Amusement Tax to cover secondary ticket sales by persons who resell tickets above face value.  Under the amended Amusement Tax, ticket resellers are required to pay the 8% Amusement Tax on the entire amount of any mark-up charged to the ticket purchaser, including any amount the broker may designate as a fee for its brokerage services.  In *Mr. B's, Inc.*, the Appellate Court upheld that tax, noting that 65 ILCS 5/11-42-1 specifically grants municipalities the power to tax "sellers of tickets" at off-premises locations.  302 Ill.App.3d at 938, 706 N.E.2d at 1007-8.

In 2005, the Ticket Sale and Resale Act, 720 ILCS 375/1.5(c), was further amended in a manner that bears directly on the key issues in this case.  The amendments added a second exception to the prohibition on ticket-scalping.  This amendment allows anyone to use certain Internet websites to sell tickets at prices above face value.  The legislative history of those amendments shows that they were designed to permit an expansion of the secondary market in tickets (and thus create competition for existing ticket brokers) while at the same time protecting consumers.  *See Senate Hearing on H.B. 873*, Ill. Gen. Ass'y, 94th Sess., Sen. Tr. 65 (May 20, 2005) (statement of Sen. Harmon).  Toward that end, the prohibition on ticket-scalping is lifted only for those resellers who use "an Internet auction listing service duly registered with the Department of Financial and Professional Regulation under the Auction License Act and with the Office of the Secretary of State on a registration form provided by that Office."  720 ILCS 375/1.5(c).  To qualify for the exception, the operator of the Internet auction listing service must meet a variety of requirements designed to ensure that those who buy tickets through on-line sites will be protected from fraud.[1]

---

[1]     Among other things, the amendment requires operators of a registered Internet site to have a standard refund policy that guarantees a refund if the ticketed event is cancelled, the ticket turns out to be counterfeit, or the ticket fails to conform to the description on the listing service.  720 ILCS 375/1.5(c)(4).

During legislative debates on the measure, a proposal was made to require the operator of a registered listing service to be responsible for collecting and remitting any applicable amusement taxes—the very obligation that the City seeks to impose against eBay.  *The General Assembly rejected that idea.*  The sponsors of the bill pointed out that Internet auction sites like eBay do not actually buy or sell tickets, but rather simply offer a marketplace for those who do; they argued that it would make no sense to require eBay to discharge the seller's obligation to pay amusement taxes.  As one of the sponsors put it, requiring entities like eBay to pay the tax would be "like saying the landlord of a small business needs to make sure that that small business is paying their sales tax."  *Senate Hearing on H.B. 873*, Ill. Gen. Ass'y, 94th Sess., Sen. Tr. 19 (May 18, 2005) (statement of Sen. Harmon).

The General Assembly made a policy decision that, rather than requiring Internet auction listing services to collect and remit amusement taxes, it would require the operator of such a service to do only two things: to warn resellers of their potential liability for municipal amusement taxes and to provide certain information in response to a request from law enforcement or taxing officials.  Thus, the Ticket Sale and Resale Act provides that, to discharge its obligations with respect to state and local taxes, the operator need only publish

> a written notice on the website after the sale of one or more tickets that automatically informs the ticket reseller of the ticket reseller's potential legal obligation to pay any applicable local amusement tax in connection with the reseller's sale of tickets, and disclose to law enforcement or other government tax officials, without subpoena, the name, city, state, telephone number, e-mail address, user ID history, fraud complaints, and bidding and listing history of any specifically identified reseller or purchaser upon receipt of a verified request from law enforcement or other government tax officials relating to a criminal investigation or alleged illegal activity.

720 ILCS 375/1.5(c)(6)(B).  As one the bill's sponsors explained, the operator's disclosure obligations are intended to be very limited:

> If the City of Chicago becomes aware of an eBay user or specific group of eBay users who are habitually failing to remit and collect the city's tax or avoiding their obligations through false user names, then the Bill gives the city the right to obtain from eBay that user's real name, address and transaction history upon submitting a specific request to eBay. From this information, the city may pursue whatever legal action it deems necessary to collect any back taxes or prosecute the user or users for fraud. In addition, if the city has confirmed and informed eBay in writing that a user or a group of specific users have been habitually skirting their obligations, then eBay, StubHub and Ticketmaster have committed, throughout the process of negotiating this Bill, to suspend or terminate that user or users' privileges.

*House Debate on H.B. 873*, Ill. Gen. Ass'y, 94th Sess., H.R. Tr. 130-31 (Apr. 15, 2005) (statement of Rep. Saviano). The City does not allege that eBay has ever failed to comply with its obligations with respect to local taxes under the Ticket Sale and Resale Act.

After the 2005 amendments to the Ticket Sale and Resale Act, eBay registered as an Internet Auction Listing Service under the Illinois Ticket Sale and Resale Act and received a license from the State and a certificate from the Secretary of State evidencing its compliance with the provisions of that Act.[2] In order to register as an "Internet Auction Listing Service" eBay was required to certify (among other things) that it "does not act as the agent of users who sell items on its website, and acts only as a venue for user transactions." 225 ILCS 407/10-27(c)(1).

### eBay's Business Model

eBay is a venue that provides auction-style and set-price listings. People or businesses that sell tickets on eBay must first register as sellers. As the Complaint alleges, a seller listing an item for sale must fill in numerous fields in order to list an item on the site. Cmplt. ¶ 7 As part of this process, the seller will choose from a variety of listing methods, including an auction-

---

[2]     A copy of eBay's 2008 Illinois Ticket Sale and Resale Certificate is attached as Exhibit A. This court may take judicial notice of this official state record. *See Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994) ("the district court may ... take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment.").

style listing or a set-price method.  *Id.* ¶¶ 7-8.  In an auction, the seller sets a per-ticket minimum

price and decides on the duration of the auction.  When the auction comes to an end, the seller

sells the ticket to whoever submits the highest bid as long as the reserve has been met.  *Id.* ¶ 8.

In the fixed price model, by contrast, the seller sets a price and the ticket is sold to the first

person who agrees to pay that price.  *Id.*  Registered users, including ticket brokers who regularly

sell tickets can set up an electronic storefront on eBay's website, which enables them to show all

of the tickets they offer on a single web page.  *Id.* ¶ 10.

The City alleges that eBay charges listing or "insertion" fees to sellers based on the

starting or reserve price of the item being sold, and that the item is ultimately sold, eBay charges

a percentage of the final sales price on a graduated scale.  Cmplt. ¶ 11.

### *The 2006 Amendment of the Amusement Tax Ordinance*

Effective September 1, 2006, the City amended its Amusement Tax ordinance to require

not only "resellers," but also "reseller's agents" to collect and remit the tax from the ultimate

purchaser.  The ordinance provides that the term "reseller's agent" means:

> a person who, for consideration, resells a ticket on behalf of the ticket's owner or
> assists the owner in reselling the ticket.  The term includes but is not limited to an
> auctioneer, a broker or a seller of tickets for amusements, as those terms are used
> in 65 ILCS 5/11-42-1, and applies whether the ticket is resold by bidding,
> consignment or otherwise, and whether the ticket is resold in person, at a site on
> the Internet or otherwise."

Chicago Municipal Code § 4-156-010.  The amended ordinance provides that it is the joint and

several duty of every ticket reseller and "reseller's agent" to "secure from each patron" the 8%

Amusement Tax and to remit the tax payment to the City.  *Id.* § 4-156-020(A).  Ticket resellers

and "reseller's agents" are required to remit the tax "only on that portion of the ticket price that

exceeds the original or face amount of the tickets."  *Id.* § 4-156-030(A).  To the extent that ticket

resellers are registered taxpayers with the City's Department of Revenue (which ticket brokers

must be to be exempt from State ticket-scalping prohibitions), the "reseller's agent" is relieved of any liability to actually collect the Amusement Tax.[3]  However, when a licensed ticket broker is not involved in the sale, the ordinance provides that the "reseller's agent" "shall be primarily responsible for collecting and remitting the tax and the reseller shall be responsible for collecting and remitting only if the reseller's agent fails to do so."[4]

In February 2007, the City's Department of Revenue sent a letter to eBay stating that eBay might be deemed a "reseller's agent" under the amended ordinance and therefore "may be required" to register for and collect and remit the Chicago Amusement Tax.  The letter requested information and documents with respect to eBay's "facilitation" of ticket resales to amusements located in Chicago from January 1, 2000 through the date of the response.  Cmplt. ¶ 24.  eBay declined to provide any of the information requested, on the ground that the City could not lawfully or constitutionally require eBay to collect or remit amusement taxes or require it to provide the documents in question.  *Id.*  This lawsuit followed.

## ARGUMENT

## I.  THE CITY HAS NO AUTHORITY UNDER STATE LAW TO REQUIRE EBAY TO COLLECT AND REMIT AMUSEMENT TAXES.

### A.  Under Illinois Law, eBay Cannot Be Deemed a "Reseller's Agent."

The threshold question the Court must consider is whether eBay can properly be deemed a "reseller's agent" under the City ordinance.  If not, the City has no authority to impose any tax or collection obligation on eBay.  For the reasons outlined below, as a matter of Illinois law,

---

[3]     The ordinance provides that a "reseller's agent" shall not be required to collect and remit the tax if it provides the Department of Revenue with a written verification that the reseller is registered with the Department and provides the Department with the reseller's tax registration number.  Chicago Municipal Code § 4-156-030(F).

[4]     The ordinance provides that each reseller or "reseller's agent" "shall be considered a tax collector for the city" and shall be entitled to retain 1% of the taxes it collects to reimburse itself for the expenses it incurs in collecting and remitting the taxes.  Chicago Municipal Code § 4-156-030(F).

eBay cannot be deemed an agent of the ticket seller and therefore should not be considered a "reseller's agent" under the ordinance.

As outlined in the City's Complaint, eBay provides a venue for ticket sellers to list a variety of goods—including tickets—for sale, and imposes certain requirements on sellers who choose to use its site. Nothing in the Complaint suggests that eBay it can be deemed the seller's agent simply because it allows the seller to use its listing site. Under Illinois law, "[t]he test of agency is the existence of the right to control the method or manner of accomplishing a task by the alleged agent." *Rollins v. Ellwood*, 141 Ill.2d 244, 261, 565 N.E.2d 1302, 1310 (1990). There is no allegation in the Complaint, nor can there be, that ticket resellers have any ability whatsoever to control eBay's actions.

Moreover, the Illinois General Assembly carefully considered eBay's business model when it amended the Ticket Sale and Resale Act and provided for registration of Internet auction listing services. It concluded that by providing a venue for ticket sellers, eBay and similar sites could *not* be deemed to be acting as agents for the sellers. Thus, in establishing the registration requirements for Internet auction listing services, the General Assembly expressly required a registrant to certify that it "does not act as the agent of users who sell items on its website, and acts only as a venue for user transactions." 225 ILCS 407/10-27(c)(1). The City does not allege that eBay does more than provide a venue for the resale of tickets. Accordingly, under State law, it cannot be deemed the agent of the ticket owners who sell tickets on its website.

In characterizing eBay as a "reseller's agent" the City apparently relies on the overbreadth of the ordinance's definition of reseller's agent, which includes anyone who "assists the owner in reselling the ticket." *See* Cmplt. ¶ 18 (highlighting those words in the definition). The term "assists," however, is vague and ambiguous. A newspaper that accepts advertising

from ticket brokers or classified ads from ticket sellers "assists the owner in reselling the tickets" in much the same way the City claims eBay does. So too does a landlord that rents space to a ticket broker. Yet it seems highly unlikely that the City Council intended to impose the obligation to collect and remit Amusement Taxes on either newspapers or landlords.

To avoid absurd results, the ordinance's definition should be interpreted to require not only a determination that the entity in question somehow "assisted" the owner in selling a ticket, but also proof that it did so as the reseller's agent (*i.e.*, under the control of the seller or reseller). After all, the City Council chose to use a term of art by invoking principles of agency law. It is logical to assume that in so doing it intended to impose taxing obligations only on individuals and entities that qualified as "agents" as that term is used under Illinois law. For the reasons outlined above, it is clear that sellers who use eBay's site have absolutely no control, nor can they assert any control, over eBay. It is also clear that an Internet auction listing service that merely provides a venue for sales is *not* the agent of the seller under Illinois law. Accordingly, by its terms, the ordinance by its terms does not apply to eBay.

This interpretation also has the benefit of avoiding a conflict between State law and the City's ordinance. Since eBay is not a reseller's agent under State law, the City cannot transform it into an agent for purposes of the City's taxing ordinance. *See* 10 Ill. L & Prac. § 741 (2007 Supp.) ("local ordinances may in no event conflict with state law"); *City of Chicago v. Roman*, 184 Ill.2d 504, 519, 705 N.E.2d 81, 90 (1998) ("the legislature can permit concurrent local legislation, but only within limits that are consistent with the state statutory scheme").

**B.     The City's Home Rule Authority Does Not Extend to Taxing On-Line Entities Like eBay.**

In any event, even if the City ordinance could be deemed to extend to eBay, the City has neither home rule authority nor statutory power to compel eBay to collect and remit the

Amusement Tax. Home rule entities like the City of Chicago have broad taxing authority under the Illinois Constitution. But that authority is subject to preemption by the General Assembly, by a three-fifths vote.[5] In 1990, the General Assembly enacted the Preemption Act, 65 ILCS 5/8-11-6a, which prohibits home rule municipalities from using their home rule authority to impose "a retailer's occupation tax, service occupation tax, use tax, sales tax or other tax on the use, sale or purchase of tangible personal property based on the gross receipts from such sales or the selling or purchase price of said tangible personal property."[6] The statute contains a variety of exceptions to this rule, none of which are relevant here.

In *Mr. B's*, the Illinois Appellate Court held that, as applied to ticket brokers, the Amusement Tax is a tax on the sale of "tangible personal property." 302 Ill.App.3d at 934-37, 706 N.E.2d at 1005-07. Because the Amusement Tax is levied "based on" the purchase price of the ticket, it falls within the definition of a tax on the "sale or purchase of tangible personal property based on . . . the selling or purchase price of said tangible personal property." Thus, any home rule authority the City may have had to impose the Amusement Tax on either ticket resellers or eBay is preempted by the Preemption Act.[7]

---

[5]    The only limit on the City's home rule taxing power is that it may not use its home rule authority to tax occupations. *See* Ill. Const. of 1970 art. VII, § 6(e) (home rule municipalities have no power to "license for revenue or impose taxes upon or measured by income or earnings or upon occupations"). Thus, if a municipal tax is deemed to be a tax on occupations, the municipality cannot impose it unless the General Assembly has provided it with express statutory authority to do so.

[6]    The Preemption Act specifically provides that "[t]his Section is a limitation, pursuant to subsection (g) of Section 6 of Article VII of the Illinois Constitution, on the power of home rule units to tax." 65 ILCS 5/8-11-6a.

[7]    eBay believes that the City would not have had any home rule authority to tax it even in the absence of the Preemption Act because, as applied to eBay, the Amusement Tax would be an occupation, rather than a sales, tax. *See Chicago Health Clubs, Inc. v. Picur*, 124 Ill.2d 1, 528 N.E.2d 978 (1988) (striking down the extension of the Chicago Amusement Tax to memberships in health clubs and racquetball clubs, on the ground that taxing memberships constituted an unlawful occupation tax on the services the clubs provided). Taxing eBay for providing a venue for ticket sales would constitute an occupation tax on the services eBay provides. Such a tax would be unlawful because, as demonstrated below, there is no statutory provision that authorizes the City to tax Internet auction listing services like eBay. In light of the Preemption Act, however, this is an issue this Court need not address.

Even if home rule authority is preempted, a home rule municipality can still impose whatever taxes the General Assembly has granted all municipalities the power to impose. *See U.S.G. Italian Marketcaffe, LLC v. City of Chicago*, 332 Ill.App.3d 1008, 1013-14, 775 N.E.2d 47, 51 (1st Dist. 2002). In *Mr. B's*, the Appellate Court held that the City had the power to tax ticket brokers under Section 11-42-1 of the Municipal Code, which allows every municipality, whether home rule or non-home rule, to tax "sellers of tickets for theatricals, shows, amusements, athletic events and other exhibitions at a place other than the theater or location where the theatricals, shows, amusements, athletic events are given or exhibited." 65 ILCS 5/11-42-1. But nothing in that or any other statute gives the City the power to tax an entity like eBay, which merely provides an online venue for the purchase and sale of tickets.

On the contrary, in enacting the 2005 amendments to Ticket Sale and Resale Act, the General Assembly expressly relieved eBay and other Internet listing services from having to collect or remit local amusement taxes. *Compare* 720 ILCS 375/1.5(b)(4) (imposing tax collection obligations on ticket brokers) *with* 720 ILCS 375/1.5(c)(6) (exempting an Internet auction listing service from tax collection obligations). Instead, eBay's sole obligation is (i) to put a prompt on its website warning ticket sellers of their obligation to pay the Amusement Tax and (ii) to provide certain limited types of information if requested by municipal authorities. The City lacks the authority to impose any additional obligation on eBay to collect and remit the Amusement Tax. Accordingly, eBay is entitled to dismissal with prejudice of Count I of the Complaint, which seeks a declaratory judgment that the City is entitled to collect Amusement Taxes from eBay and Count IV, which seeks to collect unpaid Amusement Taxes, plus interest and penalties.

C.     **The City's Request For Information From eBay Also Fails Under The Ticket Resale Act.**

The City's Complaint seeks to compel eBay not only to pay Amusement Taxes, but also to provide voluminous information about ticket sales "facilitated" by eBay going back to 2000. In Count II, the City seeks an order compelling eBay to provide its books and records to show the ticket sales involving Chicago events that eBay has "facilitated."  In Count III, the City seeks to levy fines for eBay's refusal to provide that information.

Because eBay is not required to pay the Amusement Tax, it necessarily follows that it has no obligation to allow the City to audit its books and records to determine whether those taxes have been properly paid.  Furthermore, the Ticket Sale and Resale Act specifically protects eBay from the kind of request for information about ticket sales made by the City.  Under the Act, the City is not permitted to make blanket requests for information about ticket sales.  Instead, it may only seek information with respect to identified purchasers or sellers and then only as an adjunct to an existing law enforcement or tax investigation.  *See* 720 ILCS 375/1.5(c)(6)(B).

Because the City had no authority to compel eBay to provide the documents in question, Counts II and III of the Complaint should also be dismissed with prejudice.

## II.     FEDERAL LAW PREEMPTS THE CITY FROM IMPOSING ON EBAY AN OBLIGATION TO COLLECT AND REMIT TAXES OWED BY TICKET SELLERS.

Even if the City had authority under State law to force eBay to collect and remit Amusement Taxes on the theory that it is the "reseller's agent," it would be preempted from doing so by two federal statutes: the Communications Decency Act ("CDA"), 47 U.S.C. § 230, and the Internet Tax Freedom Act ("ITFA"), 47 U.S.C. § 151 note.

**A.	The CDA Preempts the Application of the Amusement Tax Against eBay**

In this case, eBay is being sued for not collecting the Amusement Tax when it "assisted" third parties by publishing online information about their available tickets.  The City's causes of action fall squarely within the language of the CDA because they are brought under a local law that, as applied to eBay, treats a "provider . . . as the publisher or speaker of . . . information provided by another content provider."  47 U.S.C. § 230(c)(1).  For these very reasons, the prohibitions embodied in the CDA are directly implicated here.  As a result, the CDA preempts the application of the Amusement Tax against eBay.

When Congress acts expressly by statute, it may set aside state and local laws that are inconsistent with federal goals.  *See*, *e.g.*, *Gade v. Nat'l Solid Wastes Mgmt. Assn'n*, 505 U.S. 88, 98 (1992).  Congress used just such explicit preemptive language in the CDA.  *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 831 n.8 (Cal. App. Ct. 2002) (finding that in the CDA "Congress has made a clear expression of intent to preempt state law").  Section 230(c)(1) of the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  Congress made the preemptive effect of this CDA prohibition on state and local laws explicit:

> Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. *No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.*

47 U.S.C. § 230(e)(3) (emphasis added).  The CDA thus expressly preempts every state or local law that treats the provider of an Internet service "as the publisher or speaker" of information that originated with another provider.  And that is just what the Amusement Tax, as applied by the City, does here.

In enacting the CDA's prohibition, Congress sought, in substantial part, to protect interactive computer services from burdensome state and local regulations.  In the findings upon which the CDA is based, Congress stated that "the Internet and other interactive computer services have flourished, to the benefit of all Americans, *with a minimum of government regulation*." 47 U.S.C. § 230(a)(4) (emphasis added).  And in the CDA's statement of policy, Congress expressed the aim to "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, *unfettered by Federal or State regulation*." *Id.* § 230(b)(5) (emphasis added); *see Betzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003) ("Congress wanted to encourage the unfettered and unregulated development of free speech on the internet, *and to promote the development of e-commerce*") (emphasis added). Congress's rationale in taking this approach was plain: the CDA sought to preempt state rules that would make it unduly burdensome or expensive for online businesses to operate by making them responsible for the statements or actions of their customers.  This rule is expansively applied.  Thus, the CDA's declaration that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" "covers ads for housing, auctions of paintings that may have been stolen by Nazis, biting comments about steroids in baseball, efforts to verify the truth of politicians' promises, and everything else that third parties may post on a web site; 'information' is the stock in trade of online service providers." *Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008).

It would be extraordinarily difficult, if not impossible, for eBay to look behind the sale prices of tickets posted by persons using its site to determine whether (and by how much) those prices had been marked up (or down) and to ensure satisfaction of Amusement Tax obligations.

It would be equally burdensome, if not impossible, for eBay to determine whether particular sellers are ticket brokers who have already satisfied their tax obligations.  Moreover, simply because it acts as the forum for the posting of ticket sellers' speech, the City would require eBay to determine the tax due on each sale and would hold eBay liable for payment of the tax.  This kind of liability would have an obvious chilling effect on online business—and that is just what the CDA was enacted to avoid.  The inescapable conclusion is that application of the Amusement Tax to the sales alleged in the Complaint is preempted by the CDA and "[n]o cause of action may be brought and no liability may be imposed" for those sales.  47 U.S.C. § 230(e)(3).

**B.      The Internet Tax Freedom Act Bars the Imposition of the Amusement Tax on eBay**

The City's effort to impose the Amusement Tax on eBay also is precluded by the plain terms of the ITFA.  That statute bars a "State or political subdivision" from imposing "[m]ultiple or discriminatory taxes on electronic commerce."  47 U.S.C. § 151 note, § 1101(a).  There can be no doubt that the sales reached by the Amusement Tax constitute "electronic commerce" within the meaning of the ITFA, which that statute defines to mean "any transaction conducted over the Internet or through Internet access, comprising the sale, lease, license, offer, or delivery of property, goods, services, or information."  *Id*. § 1105(3).  And the Amusement Tax is "discriminatory": that term is specifically defined by the ITFA to reach, among other things, "any tax imposed by a State or political subdivision thereof, if . . . a provider of Internet access service or online services is deemed to be the *agent* of a remote seller for determining tax collection obligations solely as a result of – (I) the display of a remote seller's information or content on the out-of-State computer server of a provider of Internet access or online services; or (II) the processing of orders through the out-of-State computer server of a provider of Internet access service or online services"  *Id*. § 1105(2)(B)(ii).

That, of course, is just what the Amusement Tax purports to do.  It expressly deems entities like eBay to be the agent of the seller (or reseller) of tickets.  And it does so, in the language of the ITFA, "solely as the result of" the display of the seller's "information or content on [eBay's] out-of-State computer server" and "the processing of orders through [eBay's] out-of-State computer server," which are eBay's only roles in the transaction giving rise to tax.  Congress has flatly precluded the imposition of such tax obligations by local jurisdictions like Chicago.  For this reason as well, the Amusement Tax cannot lawfully be applied to eBay.

## III.    THE CITY HAS NO POWER UNDER THE COMMERCE CLAUSE TO TAX EBAY.

Finally, the City's attempt to tax eBay also fails because it would violate the Commerce Clause of the U.S. Constitution.  The Constitution gives Congress the power to "regulate Commerce . . . among the several States."  U.S. Const. art. I, § 8, cl. 3.  It has long been settled that "the Commerce Clause is more than an affirmative grant of power; it has a negative sweep as well.  The Clause  . . . 'by its own force' prohibits certain state actions that interfere with interstate commerce."  *Quill Corp. v. North Dakota*, 504 U.S. 298, 309 (1992) (citation omitted).  *See*, *e.g.*, *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 193-94 (1994).  This "negative command, known as the dormant Commerce Clause" (*Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179 (1995)), "limit[s] the reach of state taxing authority so as to ensure that state taxation does not unduly burden interstate commerce."  *Quill*, 504 U.S. at 313.

Application of the Amusement Tax to eBay cannot survive Commerce Clause scrutiny.  To avoid the imposition of crushing burdens on interstate businesses, the Constitution precludes the imposition of sales and use tax collection obligations on entities that lack a physical presence in the jurisdiction—and eBay has no such presence in Chicago.  Moreover, application of the Amusement Tax to online entities like eBay would make it impossible for those companies to

operate under their current business models, an outcome that inevitably would suppress interstate commerce. In just such circumstances, the Supreme Court has struck down state and local taxes on interstate businesses as unconstitutional. The same outcome is appropriate here.

### A.   The U.S. Constitution Bars State and Local Governments From Imposing Sales and Use Taxes On Corporations That Do Not Have A "Physical Presence" In The Taxing Jurisdiction

As the Supreme Court has repeatedly held, the dormant Commerce Clause prohibits a state or local government from imposing a tax that affects interstate commerce unless, among other things, the tax is "applied to an activity with a substantial nexus with the taxing State." *Jefferson Lines*, 514 U.S. at 183 (quoting *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977)). The Supreme Court has emphasized that this is a requirement with teeth: "expressly reject[ing] a 'slightest presence' standard of constitutional nexus" (*Quill*, 504 U.S. at 315 n.8 (citation and internal quotation marks omitted)), the Court has held that, where sales and use taxes like those at issue here are concerned, the constitutionally required "substantial nexus" is present only when the taxpayer has a "physical presence" in the taxing jurisdiction. *Id.* at 316-318. This physical presence requirement, the Court declared, is a "bright-line rule" (*id.* at 315-318) that provides "a safe harbor for vendors 'whose only connection with customers in the [taxing] state is by common carrier or the United States mail'" (*id.* at 315 (citation omitted)) and "firmly establishes the boundaries of legitimate state authority to impose a duty to collect sales and use taxes." *Id.* at 315-316. *See National Bellas Hess, Inc. v. Dep't of Revenue of the State of Ill.*, 386 U.S. 753 (1967) (barring Illinois from imposing a use-tax collection obligation on an out-of-state mail-order company).[8]

---

[8]       Although *Quill* and *Bellas Hess* concerned mail-order rather than Internet businesses, the dormant Commerce Clause applies in exactly the same way to both. If anything, mail order businesses, which may send a very substantial volume of catalogs to actual and potential customers in the taxing jurisdiction, are likely to have the *more* substantial physical presence in the jurisdiction. We are not aware of any decision by any court, issued in the

In its modern dormant Commerce Clause jurisprudence, the Supreme Court has recognized only two types of situations in which an out-of-state entity has the "physical presence" required to support imposition of a sales or use tax.  The first is when the entity maintains a physical facility like a "plant[] or office" in the taxing jurisdiction.  *Quill*, 504 U.S. at 315.  *See Nat'l Geographic Soc'y v. California Bd. of Equalization*, 430 U.S. 551, 552, 560-562 (1977); *D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 33 (1988).  *Compare*, *e.g.*, *St. Tammany Parish Tax Collector v. Barnesandnoble.com*, 481 F. Supp. 2d 575, 576-582 (E.D. La. 2007) (finding no "physical presence" where the Barnesandnoble.com online retailer maintained no physical space in the taxing jurisdiction and was a separate corporate entity from Barnes & Noble retail stores); *Current, Inc. v. State Bd. of Equalization*, 24 Cal. App. 4th 382, 390 (Cal. Ct. App. 1994) (finding mail-order seller had no physical presence when, *inter alia*, it had "no retail outlets * * * within the state").  The second is where the taxpayer employs persons who are physically present in the taxing jurisdiction and who have regular, systematic contact there with the taxpayer's customers, such as "a small sales force."  *Quill*, 504 U.S. at 315.  *See Scripto, Inc. v. Carson*, 362 U.S. 207, 211 (1960).  But courts have found "physical presence" *absent* when the taxpayer's personnel made only intermittent or episodic visits to the taxing jurisdiction. *Compare In re Intercard, Inc.*, 14 P.3d 1111, 1113, 1122-23 (Kan. 2000) (finding that eleven visits to install card-readers at customer locations in the taxing jurisdiction were "isolated, sporadic, and insufficient to establish a substantial nexus to Kansas") and *Dep't of Revenue v. Share Int'l*, 676 So.2d 1362, 1363 (Fla. 1996) (no nexus where taxpayer's representatives appeared and displayed products for three days of the year in the taxing jurisdiction) *with Tax*

---

more than fifteen years since *Quill* was decided, suggesting that the physical presence rule does not apply to Internet businesses.

*Appeal of Baker & Taylor, Inc. v. Kawafuchi*, 103 Hawaii 359, 369 (2004) (nexus when taxpayer "sent its representatives to Hawaii to train and service its customers.").

Under its modern approach to the dormant Commerce Clause, therefore, the Supreme Court has never found "physical presence" where a corporation maintained neither permanent physical facilities nor persons under its control who regularly and systematically contacted customers in the taxing jurisdiction. Accordingly, where a putative taxpayer falls into neither of these two categories, federal and state courts have often rejected the imposition of a sales or use tax on grounds that the business lacked the constitutionally required "physical presence" in the taxing jurisdiction. *See e.g.*, *Barnesandnoble.com*, 481 F. Supp. 2d at 577-582; *Current, Inc.*, 24 Cal. App. 4th at 390; *Share Int'l*, 676 So.2d at 1363; *Intercard, Inc.*, 14 P.3d at 1113, 1122-23; *SFA Folio Collections, Inc. v. Tracy*, 652 N.E.2d 693 (Ohio 1995); *SFA Folio Collections, Inc. v. Bannon*, 585 A.2d 666 (Conn. 1991); *Bloomingdales by Mail, Ltd. v. Pennsylvania*, 567 A.2d 773 (Pa. Cmwlth. 1989).

**B.    The Complaint Fails To Allege Any Facts That Could Establish That eBay Has A "Physical Presence" In The City Of Chicago**

In this case, the allegations in the Complaint cannot "plausibly suggest that the plaintiff has a right to relief" (*E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)) because the constitutionally requisite nexus between eBay and Chicago is absent. To begin with, the sales transactions that give rise to Amusement Tax liability plainly are not "an activity with a substantial nexus with the taxing [jurisdiction]." *Jefferson Lines*, 514 U.S. at 183 (citation omitted). Although the tickets sold on eBay are to events taking place in Chicago, the sales themselves—which are the transactions actually subject to tax—may have no direct connection with Chicago at all; it is entirely possible that the buyer and seller are both located

elsewhere, and the sales transaction is conducted through eBay facilities that are not alleged by the Complaint to be present in Chicago.

As for eBay itself, the Complaint includes four kinds of allegations on which the City might rely to show eBay's "physical presence" in the City. None of these allegations could, as a matter of law, support such a showing.[9]

### 1.    eBay University

First, the allegations in the Complaint that eBay "operates 'eBay University'" (Cmplt. ¶ 13) are insufficient as a matter of law to establish "physical presence." The Complaint alleges that "eBay University" consists of "classes run by eBay employees and/or eBay representatives" that "teach members of the public how to sell items using eBay," and that "[i]n Illinois, there are more than 30 instructors who teach eBay University classes." These allegations do not identify the sorts of contacts with the City that are necessary to establish "substantial nexus" under the Commerce Clause. See pages 18-20, *supra*.

To begin with, the "eBay University" allegations are riddled with fundamental ambiguities that independently undermine their ability to support the City's claim. Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). Although a plaintiff may plead in the alternative, Fed. R. Civ. P. 8(a)(3) & (d)(2), "the coupling of a legally insufficient theory with one which may be viable is improper." *Berman v. Richford Indus., Inc.*, 1978 WL

---

[9]    The Complaint also describes in detail how eBay "provid[es] sellers with online tools to facilitate the sale of their items." Cmplt. ¶¶ 5-13. This allegation, which essentially describes the interactivity of eBay's website, does not establish nexus. The accessibility of an interactive website to users in a jurisdiction does not qualify as physical presence; in this respect, eBay's site is no different from those operated by all Internet businesses. In *Quill*, the Court held that nexus was not established by the taxpayer's practice of licensing software to North Dakota customers that "enabled them to check Quill's current inventories and prices and to place orders directly." 504 U.S. at 302 n.1, 315 n.8. And that was so even though the software took the form "floppy diskettes to which Quill h[eld] the title" and that were physically present in North Dakota (*id.*), a physical presence in the taxing jurisdiction far

1104, at *5 (S.D.N.Y. July 28, 1978); 61A Am. Jur. 2d Pleading § 68 (May 2008) (citing same). Such a coupling "at best . . . burdens the complaint with surplusage and at worst . . . may becloud the actionable theory to the point where it fails to state a claim upon which relief may be granted." *Berman*, 1978 WL 1104, at *5; *see also, e.g.*, *Bates v. Mo. Dep't of Corrections*, 2008 WL 380417, *1 (E.D. Mo. Feb. 11, 2008) (dismissing a complaint because, *inter alia*, it made a "vague and broad sudden allegation of a 'custom and/or policy'" without "indicia of fact in support"); *cf. United States v. Bush*, 70 F.3d 557, 562 (10th Cir. 1995) (harshly criticizing an indictment that contained "the conjunction 'and/or'" because "[s]uch vague language is strongly disfavored").

The Complaint here, to the extent that it relies on the "eBay University" allegations to support a finding of "physical presence," does not provide "a short and plain statement of the claim showing" entitlement to relief because it uses vague and studied ambiguities to gloss over two crucial points: the relationship of "eBay University" instructors *to* eBay, and the presence of "eBay University" instructors and classes *in* the City of Chicago. As to the first of these, the Complaint suggests only that "eBay University" is composed of "classes run by eBay employees *and/or* eBay representatives." Cmplt. ¶ 13 (emphasis added). It thus makes *no* firm allegation that "eBay University" instructors are in fact eBay employees, that they are eBay's independent contractors or agents, that they are controlled by eBay, or that they receive benefits of any kind from eBay in the form of salary or commissions. Absent such an allegation, the Complaint is insufficient.[10]

more tangible than that represented by eBay's interactive website. So far as we are aware, no court has ever held that Internet interactivity of the sort described in the Complaint suffices to create nexus.

[10]    An out-of-state business does not obtain "physical presence" merely by working or contracting with local residents, even when the relationship is considerably closer than the one alleged here between the "instructors" and eBay. *See, e.g.*, *Scholastic Book Clubs, Inc. v. State, Dep't of Treasury*, 567 NW.2d 692 (Mich. App. Ct. 1997) (finding no "physical presence" where out-of-state bookseller relied on in-state teachers to solicit schoolchildren to

As for the second of the Complaint's ambiguities, it alleges no connection at all between the instructors described and the City of Chicago, instead alleging that "*[i]n Illinois*, there are more than 30 instructors who teach eBay University classes." *Id.* (emphasis added). The Complaint's failure to allege that "eBay University" classes occur in Chicago or involve Chicago sellers is an independent reason why it asserts no fact that could plausibly support a finding of "physical presence" and thus a claim for relief.[11]

### 2.    Venues and ticket brokers

The allegations in the Complaint that "tickets to City amusements are issued by venues located in the City," that "local ticket brokers and other City-based resellers purchase tickets from the local venues," and that "the local ticket brokers and other City-based resellers post the tickets on Defendant's web site" (Cmplt. ¶ 14), also are insufficient as a matter of law to establish "physical presence." These allegations suggest that "venues" and "local ticket brokers"—not eBay—have a "physical presence" in the City. If eBay owned the "venues," or if eBay employed the "local ticket brokers," then it might be "one toe over the bright-line" of *Quill* and *Bellas Hess*. *Current, Inc.*, 24 Cal. App. 4th at 389. But the City makes no such allegation,

---

purchase books because bookseller did not exercise control over teachers); *Pledger v. Troll Book Clubs, Inc.*, 871 S.W.2d 389 (Ark. 1994) (same); *Dell Catalog Sales, L.P. v. Comm'r of Revenue Servs.*, 834 A.2d 812 (Conn. Sup. Ct. 2003) (finding that a contractual relationship between Dell and another company to service Dell computers in-state did not establish that Dell had a "physical presence" in the state). The Supreme Court held that independent contractors and similar agents may establish what is termed "attributional nexus" in response to the "concern[] that companies could avoid tax obligations merely by reclassifying employees, such as salespeople, as independent contractors," in cases where the out-of-state businesses "had in-state sales representatives acting continuously on their behalf to solicit orders for sales to customers." *Barnesandnoble.com*, 481 F. Supp.2d at 581 (citing *Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue*, 483 U.S. 232, 250 (1987), and *Scripto*). But here, there is no allegation that the activities of eBay University instructors were at all "tantamount to acting as a sales presence for [eBay]." *Id.*

[11] Chicago may apply a sales or use tax to an out-of-state business only if that business has a physical presence *in the City*; a presence elsewhere in Illinois is not sufficient. *Cf. Barclays Bank PLC v. Franchise Tax Bd. of California*, 512 U.S. 298, 312 n.10 (1994) ("*Quill* held that the Commerce Clause requires a taxpayer's 'physical presence' *in the taxing jurisdiction* before that jurisdiction can constitutionally impose a use tax.") (emphasis removed and added); *Quill*, 504 U.S. at 313 n.6 (describing the United States as having "*6,000-plus taxing jurisdictions*") (emphasis added). That conclusion follows necessarily from the rationale for *Quill*'s rule, which is

nor could they.  And it is beside the point that "local ticket brokers . . . post the tickets on Defendant's web site": that shows only that tickets are being sold in interstate commerce and says nothing at all about whether eBay has an off-line Chicago "physical presence."  *See supra* n.11.

### 3. Business relationships

The Complaint gets no further in alleging that "Defendant maintains other contacts and relationships with individuals and businesses located in the City."  Cmplt. ¶ 14.  For the reasons noted above, these sorts of "overly vague and general" allegations are insufficient as a matter of law to support the City's claim.  In any event, "contacts" and "relationships" have never been found by the Supreme Court to amount to "physical presence."  In *Quill*, the out-of-state seller had myriad "contacts and relationships" with the taxing jurisdiction—it was "the sixth largest vendor of office supplies" in North Dakota and had "about 3,000 customers" in the State.  504 U.S. at 302.  But none of these business relationships was relevant to whether Quill had a "*physical* presence" in the taxing jurisdiction.  *See also Barnesandnoble.com*, 481 F. Supp. 2d at 578-582 (rejecting the argument that the "business relationship" between Barnesandnoble.com and in-state Barnes & Noble retail stores gave the online retailer a "physical presence" in the taxing jurisdiction).  Indeed, any assertion by the City that eBay's "contacts and relationships" amount to a "physical presence" would confuse the lesser nexus required by the Due Process Clause with the greater, "substantial nexus" required by the Commerce Clause.  *See Quill*, 504 U.S. at 305-308.

---

that only the taxpayer's physical presence in the taxing jurisdiction serves to minimize the burden of having to comply with that jurisdiction's tax regime.

4.    *"Cookies" on eBay users' computers*

Finally, the allegation in the Complaint that "Defendant routinely places 'cookies' on the computers of its customers, including those who reside in the City" (Cmplt. ¶ 15), is insufficient as a matter of law to establish "physical presence." A "cookie," in computing usage, is "a packet of data sent by an Internet server to a browser, which is returned by the browser each time it subsequently accesses the same server[;] used to identify the user or track their access to the server." NEW OXFORD AM. DICTIONARY 373 (2005). The Complaint thus alleges that eBay, like most online retailers, places a miniscule amount of easily removed data on the computers of its users when they access its website. These "cookies" cannot amount to "physical presence," for two independent reasons.

First, a "cookie" on the computer of an eBay user is not the property of eBay. The owner of the computer may delete the "cookie" at any time. "Cookies" thus cannot constitute eBay's "presence" in the City at all, physical or otherwise. *Cf. Specht v. Netscape Communications Corp.*, 306 F.3d 17, 36 n.19 (2d Cir. 2002) (noting that the provider of a web browser has no intellectual property in a "cookie" placed on a user's computer and suggesting that any property interest is likely to belong to the user). And second, even if the "cookies" were the property of eBay and even if they should be considered in the *Quill* analysis, they would be precisely the kind of *de minimis* contact that *Quill* held—as a matter of law—cannot establish "physical presence." The Court in *Quill* pointed out that "Quill licensed software to some of its North Dakota clients," which meant that "a few floppy diskettes to which Quill holds title" were present in the taxing jurisdiction. 504 U.S. at 315 n.8 (internal quotation marks omitted); *see also id.* at 320 n.1. But the presence of such *de minimis* personal property, the Court said, "does not meet the 'substantial nexus' requirement of the Commerce Clause." *Id.*; *see also id.* at 330 n.3 (White, J., dissenting) (recognizing that "the majority concludes as a matter of law" that

25

"Quill's ownership of software" in taxing state does not "constitute[] sufficient physical presence"). The presence of "cookies" placed by eBay on users' computers, which constitute a far *less* tangible and concrete physical presence than did Quill's floppy diskettes, therefore cannot support a finding of "physical presence."

* * * * *

Case law thus compels the conclusion that the Commerce Clause precludes imposition of the Amusement Tax on eBay. And that result is confirmed by a review of the broader constitutional policy that is effectuated through the physical presence requirement. The Supreme Court in *Quill* stressed the very "significant" burden that would fall on interstate commerce if out-of-state merchants like eBay that lacked a physical presence in the taxing jurisdiction had to comply with sales and use-tax "obligations [that] might be imposed by the nation's 6,000-plus taxing jurisdictions." *Quill*, 504 U.S. at 313 n.6. That concern has only grown more acute since the decision in *Quill*, as the number of taxing jurisdictions has increased markedly. *See* U.S. GEN. ACCOUNTING OFFICE, SALES TAXES: ELECTRONIC COMMERCE GROWTH PRESENTS CHALLENGES; REVENUE LOSSES ARE UNCERTAIN 5 (2000) (finding more than 7,600 tax jurisdictions only nine years later).[12] If contacts of the sort alleged by Chicago here are enough to trigger sales and use-tax obligations, the impact on internet businesses would be devastating; it would be enormously burdensome for such businesses to track the myriad taxes imposed by these thousands of jurisdictions, along with the varying tax rates applied by these jurisdictions to the sales of different types of products.

Indeed, the magnitude of the burden that would be imposed on businesses like eBay were they required to collect the Amusement Tax (a requirement that could be replicated by local tax-

collecting jurisdictions across the country) cannot be overstated.  As is apparent from the Complaint's description of the transactions at issue here, eBay is not the owner of the tickets being sold, does not have possession of the tickets put up for sale on its site, has no way to know or accurately verify how many times the tickets changed hands before being placed for sale on the site, and cannot know whether the seller obtained the tickets for face value, for more than for face value, or for less than face value.  *See* Cmplt. ¶¶ 7-9.  It would be difficult  and unduly burdensome, if not impossible for eBay to calculate the amount of Amusement Tax owing on such a sale—which must be determined for *each* transaction by looking to the difference between the initial price paid for a ticket and the resale price—and doing so would, at a minimum, require a fundamental change in eBay's business model.  That prospect raises precisely the sort of "structural concerns about the affect of state regulation on the national economy" that led the Supreme Court to strike down the tax challenged in *Quill*.  504 U.S. at 312.

Moreover, in reaffirming the "physical presence" requirement, the Supreme Court emphasized in *Quill* that "a bright-line rule in the area of sales and use taxes . . . encourages settled expectations and, in doing so, fosters investment by businesses and individuals."  504 U.S. at 316.  "Indeed," the Court noted, "the mail-order industry's dramatic growth over the last quarter century" may be "due in part to the bright-line exemption from state taxation created in *Bellas Hess*."  *Id*.  Precisely the same thing is true of internet commerce, which has developed in the "safe harbor" of *Quill*.  Were the *Quill* rule to be abandoned, as Chicago effectively asks here, internet commerce would be severely burdened by legal uncertainty and a patchwork of sales and use tax regimes.  *See, e.g.*, Austan Goolsbee, *In a World Without Borders: The Impact*

---

<sup>12</sup>     The *Quill* Court rejected the argument that computer programs would make sales and use tax collection relatively easy.  *See* 504 U.S. at 332 (White, J., dissenting) (arguing that "the costs of compliance" would be

*of Taxes on Internet Commerce*, 115 Q.J. ECON. 561, 564 (2000) (using data from the purchase decisions of approximately 25,000 online users to conclude that "applying existing sales taxes to Internet commerce might reduce the number of online buyers by up to 24 percent").  If internet businesses are to be subjected to these burdens, it should be Congress, rather than a local municipality or a court, that takes that step; Congress is "better qualified" to assess the magnitude of the burden that would be placed in internet businesses and "has the ultimate power to resolve" the appropriate balance between state taxing authority and the need to safeguard interstate commerce.  *Quill*, 504 U.S. at 318.  And so far, Congress has refrained from subjecting internet businesses to the sort of local taxing authority asserted by Chicago here:  it remains the policy of the United States "to preserve the vibrant and competitive free market that presently exists for Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. § 230(b)(2).

Therefore, even "constru[ing] the complaint in the light most favorable to the plaintiff," "accepting as true all well-pleaded facts alleged," and "drawing all possible inferences in [the plaintiff's] favor" (*Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)), the allegations in the Complaint are insufficient, as a matter of law, to support the imposition of Chicago's Amusement Tax on eBay.  That conclusion is compelled by the Constitution, which insists on a "'sharp distinction . . . between mail-order sellers with [a physical presence in the taxing] State and those . . . who do no more than communicate with customers in the State by mail or common carrier as part of a general interstate business.'"  *Quill*, 504 U.S. at 311 (quoting *Nat'l Geographic Soc'y*, 430 U.S. at 559) (omissions and alterations in original).  This Court accordingly should dismiss the Complaint in its entirety.

---

"nominal" because of "modern computer and software technology").

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.


Dated: August 8, 2008                          Respectfully submitted,

                                               *eBay, Inc.*

                                               By: s/   Lori E. Lightfoot
                                                       One of its attorneys

                                               Michele Odorizzi
                                               Lori E. Lightfoot
                                               MAYER BROWN LLP
                                               71 South Wacker Drive
                                               Chicago, IL 60606
                                               312-782-0600


                                               Charles A. Rothfeld
                                               MAYER BROWN LLP
                                               1909 K Street, N.W.
                                               Washington, D.C. 20006
                                               202-263-3000

                                               Michael J. Kelly
                                               Jill E. Anderson
                                               FREEBORN & PETERS LLP
                                               311 South Wacker Drive
                                               Suite 3000
                                               Chicago, IL 60606
                                               312-360-6000

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CITY OF CHICAGO, ILLINOIS | |
| Plaintiff, | |
| | Case No. 08 CV 3281 |
| v. | |
| | Hon. Blanche M. Manning |
| EBAY, INC. | |
| Defendant. | |

**EXHIBIT LIST**

A.    2008 eBay, Inc. Registration with the Illinois Secretary of State under the Ticket Sale and Resale Act and Illinois Ticket Sale and Resale Certificate (Registration # 2008-97) (excerpts).

# Exhibit A



# OFFICE OF THE SECRETARY OF STATE

### JESSE WHITE • Secretary of State

February 7, 2008

Brian Levey
eBAY Inc.
2145 Hamilton Ave.
San Jose, CA  95125

Dear Mr. Levey:

Receipt is acknowledged of the 2008 Ticket Sale and Resale Registration Form on behalf of **eBay Inc.**, 2145 Hamilton Ave., San Jose, California 95125.

The said 2008 Ticket Sale and Resale Registration Form has been placed on file in this office, dated February 7, 2008, in compliance with the Illinois Ticket Sale and Resale Act, 720 ILCS 375.

Enclosed are the Ticket Sale and Resale Registration Certificate for the year 2008.

Sincerely,

Lissa Richno
Public Records
Index Department

Enclosure



**State of Illinois**
**Executive Department**

# *ILLINOIS TICKET SALE AND RESALE CERTIFICATE*

The Illinois Secretary of State does hereby certify that the following entity
has registered an Internet Auction service for the year 2008
under the Illinois Ticket Sale and Resale Act.

Brian Levcy
eBAY INC.
2145 Hamilton Ave.
San Jose, California 95125

2008-97

---

**Registration Number**

This registration expires on December 31, 2008



*Jesse White*
Secretary of State

## 2008 Ticket Sale and Resale Registration Form
### (720 ILCS 375)

Name of Business: _eBay Inc._

Address: _2145 Hamilton Ave_

City: _San Jose_

State: _California_

ZIP Code: _95125_

## CERTIFICATION

I certify that _eBay Inc._

Name of Entity

as a: ☐ sole proprietorship  ☐ partnership  ☑ corporation  ☐ limited liability company,

the entity engages in the sale and/or resale of tickets on a regular and ongoing basis; operates as an Internet auction listing service for the resale of tickets; or operates a Web site for the resale of tickets. **(Check all that apply below.)**

☐ Ticket Broker [720 ILCS 375/1.5(b)] **(Complete Schedule A)**

☑ Through an Internet auction listing service [720 ILCS 375/1.5(c)] **(Complete Schedule B)**

☐ Through an Internet Web site [720 ILCS 375/1.5(e)] **(Complete Schedule C)**

— — — — — — — — — — — — — — — — — — — — — — — — —

This annual registration form must be accompanied by the required schedule(s), documentation and $100 filing fee. Make check or money order payable to **Secretary of State.**

Major credit cards accepted: (check one)  ☐ Visa  ☐ Master Card  ☐ Discover

Card Number: _____  Expiration Date: _____

Name as it appears on credit card: _____

**FOR OFFICE USE ONLY:**

**Registration Number:** _____

**FILED**
INDEX DEPARTMENT
FEB 0 7 2008
IN THE OFFICE OF
SECRETARY OF STATE

## SCHEDULE B
## INTERNET AUCTION SALES
**(An entity, the Web site of which provides an online bid submission process with optional sales at a fixed price.)**

The operator of the Internet auction listing service meets the following requirements:

(1) The operator maintains a listing of the names and addresses of its corporate officers (attach current list to Registration Form);

(2) The operator is in compliance with all applicable federal, state, and local laws relating to ticket selling activities, and the operator's officers and directors have not been convicted of a violation of this Act within the preceding 12 months;

(3) The operator maintains, either itself or through an affiliate, a toll-free number dedicated for consumer complaints;
    Toll-free number: _1-106-769-2442_

(4) The operator provides consumer protections that include at a minimum:
    (A) Consumer protection guidelines; (attach copy to Registration Form)
    (B) Standard refund policy that guarantees to all purchasers that it will provide and in fact provides a full refund of the amount paid by the purchaser (including, but not limited to, all fees, regardless of how characterized) if the following occurs: (attach copy to Registration Form )
        (1) The ticketed event is canceled and the purchaser returns the tickets to the seller or Internet auction listing service; however, reasonable delivery fees need not be refunded if the previously disclosed guarantee specifies that the fees will not be refunded if the event is canceled;
        (2) The ticket received by the purchaser does not allow the purchaser to enter the ticketed event for reasons that may include, without limitation, that the ticket is counterfeit or that the ticket has been canceled by the issuer due to non-payment, unless the ticket is canceled due to an act or omission by such purchaser;
        (3) The ticket fails to conform to its description of the Internet auction listing service; or
        (4) The ticket seller willfully fails to send the ticket or tickets to the purchaser, or the ticket seller attempted to deliver the ticket or tickets to the purchaser in the manner required by the Internet auction listing service and the purchaser failed to receive the ticket or tickets.
    (C) Standards of professional conduct; (attach copy to Registration Form)

(5) The operator has adopted an independent and disinterested dispute resolution procedure that allows resellers or purchasers to file complaints against the other and have those complaints mediated or resolved by a third party, and requires the resellers or purchasers to submit to the jurisdiction of the State of Illinois for complaints involving a ticketed event held in Illinois; (attach to Registration Form a statement of procedure for disposition of consumer complaints, and copy of policy or contract for arbitration of same, with direct reference to the sections required by 720 ILCS 375/1.5(e))

(6) The operator either complies with all applicable requirements of the Retailers' Occupation Tax Act and collects and remits all applicable federal, state, and local taxes; or
    (A) publishes a written notice on the Web site after the sale of one or more tickets that automatically informs the ticket reseller of the ticket reseller's potential legal obligation to pay any applicable local amusement tax in connection with the reseller's sale of tickets, and discloses to law enforcement or other government tax officials, without subpoena, the name, city, state, telephone number, e-mail address, user ID history, fraud complaints, and bidding and listing history of any specifically identified reseller or purchaser upon the receipt of a verified request from law enforcement or other government tax officials relating to a criminal investigation or alleged illegal activity; and

(7) The operator either:
    (A) has established and maintains a consumer protection rebate fund in Illinois in an amount in excess of $100,000, which must be cash available for immediate disbursement for satisfaction of valid consumer complaints; or
    (B) has obtained and maintains in force an errors and omissions insurance policy that provides at least $100,000 in coverage and proof that the policy has been filed with the Department of Financial and Professional Regulation. (Attach written evidence from the depository where consumer protection rebate fund is held, including name of account, number of account and account balance. If applicable, attach copy of surety bond.)

Under penalties pursuant to Section 1-109 of the Code of Civil Procedure (*), the undersigned certifies that the statements set forth in the above and foregoing registration are true and correct.

_____          _____
Signature of Agent for Internet Auction Sales                Date

_Brian Wiley  Assistant Secretary_
Name of Agent for Internet Auction Sales (Type or print legibly)

_tel. 376-740_
Telephone # at which Agent for Internet Auction Sales may be contacted

(*) Any person who makes a false, material statement on this Ticket Sale and Resale Registration, which such person does not believe to be true, shall be guilty of a Class 3 Felony.

## <u>CERTIFICATE OF SERVICE</u>

 The undersigned, an attorney, hereby certifies that on August 8, 2008, she caused a copy of the foregoing Defendant eBay, Inc.'s MOTION TO DISMISS, MEMORANDUM OF DEFENDANT eBAY, INC. IN SUPPORT OF ITS MOTION TO DISMISS, and NOTICE OF MOTION regarding same via the Northern District of Illinois Electronic Filing System to all registered counsel.

Dated: August 8, 2008         By: <u>s/  Lori E. Lightfoot    </u>